IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA DICKERSON and GERALD MITTIG,

        Plaintiffs,

                                    3:12-CV-12-PK

v.                                    OPINION AND
                                    ORDER

CABLE COMMUNICATIONS, INC.,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiffs Donna Dickerson and Gerald Mittig filed this action against their former

employer, defendant Cable Communications, Inc. ("Cable"), on behalf of themselves and all

others similarly situated, on January 4, 2012. Plaintiffs allege Cable's liability under federal and

Oregon law for failure to pay all wages owed, failure to pay overtime wages, and failure to pay

all wages due and owing at the termination of plaintiffs' employment. On January 31, 2012,

Cable answered plaintiffs' complaint and alleged counterclaims for fraud and for award of

prevailing-party attorney fees against the plaintiffs. This court has federal question jurisdiction

over plaintiffs' federal wage and hour claims pursuant to 28 U.S.C. § 1331, and supplemental

jurisdiction over plaintiffs' closely related state-law claims and Cable's counterclaims pursuant to

28 U.S.C. § 1367.

Now before the court is plaintiffs' Federal Civil Procedure Rule 12(b)(6) motion (#13) to dismiss Cable's counterclaims for failure to state a claim. I have considered the motion, oral argument on behalf of the parties, and all of the papers and pleadings on file. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part as moot, as discussed below.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), the allegations in support of a claim must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949; *see also, e.g., Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (applying principles derived from *Twombly* and *Iqbal* with equal force to claims stated in

Page 2 - OPINION AND ORDER

complaints and counterclaims stated in responsive pleadings).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the pleading as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiff Dickerson was employed by Cable as a non-managerial installation technician in Oregon from approximately September 2007 to August 2011. Plaintiff Mittig was employed by Cable as a non-managerial installation technician in Oregon from approximately December 2008 to August 2011. The class plaintiffs purport to represent is proposed to be defined as "[a]ll current and former employees of [Cable] who worked as non-managerial installation technicians in the state of Oregon at any time from December 19, 2005, through the date of final disposition of this action." Plaintiffs believe there are more than 100 absent class members.

Defendant Cable is a Nevada corporation headquartered in Georgia that conducts business and employs employees in Oregon. Plaintiffs allege that Cable has employed over 100

non-managerial installation technicians in Oregon.

## II.    Plaintiffs' Allegations and Claims

By and through their complaint, plaintiffs allege that Cable systematically requires its non-managerial installation technician employees to work "off-the-clock" without compensation, including by failing to provide employees with meal periods but nevertheless requiring them to deduct meal periods from their hours worked, requiring them to perform tasks following the ends of their shifts, requiring them to undergo training without pay, and other, similar, practices. In addition, plaintiffs allege that Cable systematically requires its non-managerial installation technician employees to record fewer hours than actually worked in order to avoid making overtime payments.

Arising out of the foregoing, plaintiffs' allege defendants' liability for failure to pay all wages owed in violation of Or. Rev. Stat. 652.120, failure to pay overtime in violation of Or. Admin. R. 839-020-0030, failure to pay wages owed at termination in violation of Or. Rev. Stat. 652.140, willful refusal to pay wages in violation of Or. Rev. Stat. 652.150, and failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## III.    Defendant's Allegations and Counterclaims[1]

Cable alleges that plaintiffs, like all of its non-managerial installation technicians, were required to fill out a daily timecard and to certify by their signatures that the recorded total of hours worked on the daily timesheet was correct on a daily basis. In addition, on a weekly basis

---

[1] Except where otherwise indicated, the following recitation constitutes the court's construal of the allegations contained in Cable's answer, assuming the truth of all allegations of fact.

these employees were required to certify that weekly totals of their hours worked were correct. Cable alleges that plaintiffs, like all of its non-managerial installation technicians, were paid according to the hours recorded on their timesheets and certified by them to be correct. By and through its answer to plaintiffs' complaint as originally filed, Cable brought two counterclaims against the plaintiffs, one for common-law fraud, and one for award of prevailing-party attorney fees.

Cable appears to bring its fraud counterclaim on two alternative theories. Cable takes the primary position that if plaintiffs' allegations of working off the clock are accurate, plaintiffs necessarily falsely certified the accuracy of their daily and weekly timesheets during the pendency of their employment by Cable. On this theory, plaintiffs' inaccurate signed certifications constitute intentional false representations actionable as fraud.

In the alternative, it is Cable's position that plaintiffs' signed certifications must be accurate, and it is necessarily plaintiffs' allegations that they worked hours for which they never received compensation, made in the course of and in connection with this action, that are inaccurate. According to Cable's alternative theory, plaintiffs' allegations in support of their wage and hour claims are intentional misrepresentations actionable as fraud.

By and through its answer as originally filed, Cable brought its counterclaim for prevailing-party attorney fees under Or. Rev. Stat. 653.055. On April 25, 2012, Cable amended its answer for the sole purpose of withdrawing its counterclaim for fees under Section 653.055, and restating that claim as a prayer for award of prevailing-party fees.

Page 5 - OPINION AND ORDER

## ANALYSIS

Plaintiffs move to dismiss both of Cable's counterclaims against them.

### I.    Cable's Common-Law Fraud Counterclaim

As noted above, Cable brings its fraud counterclaim on the alternative theories that plaintiffs either worked hours for which they did not receive compensation, as claimed in connection with this action, in which case plaintiffs fraudulently misrepresented to Cable that they had worked only the hours recorded on their timesheets, or else plaintiffs worked only the hours recorded on their daily and weekly timesheets, and not the additional hours claimed in connection with this action, in which case plaintiffs have made fraudulent misrepresentations to Cable and to this court regarding the basis for their claims. Under neither theory has Cable stated a viable cause of action for fraud.

The elements of fraud under Oregon law are "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark*, 274 Or. 387, 391 (1976); *Johnsen v. Mel-Ken Motors*, 134 Or. App. 81, 89 (1995).[2] On the theory that the plaintiffs' allegations in this lawsuit are accurate, and their certified timesheets inaccurate, Cable's position is that the timesheet certifications constituted false representations made with the intent to cause Cable to pay plaintiffs less compensation than they had earned, thereby causing Cable to become potentially

---

[2]   Some Oregon courts consolidate the nine elements of a claim for fraud down to a list of five, but the same essential requirements are present whether enumerated as five or nine elements.

liable to plaintiffs not merely for the shortfall in plaintiffs' compensation but also for additional

statutory penalties, including waiting-time penalties under Oregon law (*see* Or. Rev. Stat.

652.150), liquidated damages under the FLSA (*see* 29 U.S.C. § 216(b)), and/or plaintiffs'

attorney fees (*see* Or. Rev. Stat. 652.150; 29 U.S.C. § 216(b)).  However, because no judgment

has been awarded in plaintiffs' favor on plaintiffs' wage claims, Cable has clearly not yet suffered

its contemplated damages (and may never do so).  A fraud claim does not accrue on the basis of

speculation that future damages may be incurred.  Moreover, even if plaintiffs ultimately obtain a

money judgment in their favor on their wage claims, the immediate or proximate cause of

defendants' obligation to pay any such money judgment would be, not plaintiffs' alleged fraud,

but rather this court's order, which would not be sufficient to satisfy the "consequent and

proximate injury" element of the cause of action.  Similarly, assuming without deciding that

incurring attorney fees in defending against plaintiffs' wage claims could otherwise constitute an

"injury" for purposes of a fraud claim,[3] the proximate cause of Cable's fees incurred in defending

this action is, not plaintiffs' alleged fraud, but rather the filing of plaintiffs' complaint.  Again, a

cause of action will not lie for fraud where the purported fraud is not the proximate cause of the

complaining party's injury.

   Absent any allegation of cognizable damages consequent to plaintiffs' alleged intentional

misrepresentations on their daily and weekly time records, Cable's fraud counterclaim cannot

survive plaintiffs' motion on the theory that plaintiffs' allegations in this lawsuit are accurate and

---

   [3]  The more clearly applicable cause of action that would be available to Cable for
assertion against the plaintiffs in the event Cable's allegations were correct, but its only
cognizable damages were unnecessarily incurred attorney fees, would be malicious prosecution.
*See, e.g., Mantia v. Hanson*, 190 Or. App. 412, 419-420 (2003).

their certified timesheets inaccurate.  Moreover, the fraud counterclaim to the extent pled on such a theory suffers from additional defects.  As to Cable's right to rely on plaintiffs' timesheet certifications, I note that Cable has expressly alleged that, under the terms of their employment, all Cable's technician employees "were required to sign their daily timesheets under th[e] certification language," Answer, ¶ 21, and additionally "were required to sign their weekly report under th[e] certification language," Answer, ¶ 24.  That is, Cable has alleged that signing the timesheet certifications was a requirement Cable imposed on its non-managerial installation technician employees as a condition on their receipt of their compensation for the services they provided to Cable.  Where Cable's non-managerial installation technician employees did not have the option of declining to sign the pre-printed certifications, but rather were required to sign them by their employer's express instruction, Cable's right to rely on the accuracy of the certifications is called seriously into question.  Furthermore, as a matter of express Oregon statutory law, the certifications were not enforceable by Cable against the plaintiffs to establish that the signatory employees were entitled to compensation only for the hours they recorded, and not to compensation for additional, unrecorded hours:

> An employer may not by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 or any statute relating to the payment of wages, except insofar as the Commissioner of the Bureau of Labor and Industries in writing approves a special contract or other arrangement between the employer and one or more of the employer's employees.  The commissioner may not give approval unless the commissioner finds that such contract or arrangement will not prejudicially affect the interest of the public or of the employees involved, and the commissioner may at any time retract such approval, first giving the employer not less than 30 days' notice in writing.

Or. Rev. Stat. 652.360(1).  As such, as a matter of law Cable at most could have had a right to

rely on the certifications for the proposition that plaintiffs worked *at least* as many hours as they recorded, but not for the proposition that plaintiffs worked *no more than* the number of hours recorded.

Finally, analysis of the universe of possible outcomes of the parties' wage dispute further establishes the logical incoherence of Cable's theory of fraud. I note, preliminarily, that it is clear under applicable Oregon and federal law that Cable could only be obliged to pay plaintiffs "penalty" wages over and above the compensation plaintiffs are due for their hours worked in the event of willful or bad-faith nonpayment of plaintiffs' earned wages. *See* Or. Rev. Stat. 652.150; 29 U.S.C. § 260. Given that statutory penalties are therefore available to a wage-and-hour plaintiff only where the defendant employer knew or had reason to know that the plaintiff was entitled to claimed compensation and nevertheless refused to pay, there are only three classes of outcome to plaintiffs' wage claims that might obtain here, in connection with none of which would a counterclaim for fraud lie. First, Cable could prevail on plaintiffs' wage claims, in which case Cable would incur no loss in consequence of plaintiffs' action against it other than attorney fees and in any event would have a discretionary right to recovery of its reasonably incurred attorney fees (*see* Or. Rev. Stat. 653.055(4); 29 U.S.C. § 216(c)). On this outcome, because Cable would have suffered no cognizable damages in consequence of plaintiffs' purported fraudulent misrepresentations, no counterclaim for fraud would lie.

Second, Cable could be found liable on plaintiffs' claims but not liable for statutory penalties. This is the outcome that would obtain if Cable's theory of fraud were precisely correct: that plaintiffs secretly worked hours in excess of the hours recorded on their timesheets, but fraudulently under-represented their total hours worked in an effort to induce Cable to underpay

Page 9 - OPINION AND ORDER

them in order to sandbag them with a subsequent claim for penalty wages. Setting aside the implausibly quixotic motive Cable imputes to plaintiffs in espousing this theory, if plaintiffs were (or are) conducting themselves in the manner Cable purports to contemplate, plaintiffs would inevitably be hoist by their own petard, in that a claim for statutory penalties will not lie where a plaintiff employee deliberately and successfully conceals from a defendant employer the fact that the employer was under an obligation to pay the employee wages for worked but unrecorded hours. In the event this outcome obtained, Cable would be liable to plaintiffs only for the compensation to which plaintiffs would have been entitled even absent their purported fraudulent misrepresentation. Because Cable would not have suffered cognizable damages in consequence of plaintiffs' purported fraud, no counterclaim for fraud would lie.

Third, Cable could be found liable both on plaintiffs' wage claims and for statutory penalties. This event could obtain only if Cable's nonpayment of the wages to which plaintiffs were entitled for their hours worked were willful, *see* Or. Rev. Stat. 652.150, or were in bad faith, *see* 29 U.S.C. 260. For Cable to have failed to pay plaintiffs' full wages willfully or in bad faith, Cable would have to have had actual or constructive knowledge that plaintiffs had worked hours in excess of those totals certified as accurate on their timesheets. In the event Cable had such actual or constructive knowledge notwithstanding plaintiffs' timesheet certifications, Cable would be unable to establish either its right to rely on the accuracy of the certifications or the materiality of the representations contained therein. Under such circumstances, no counterclaim for fraud would lie.

For the foregoing reasons, plaintiffs' motion is granted as to Cable's fraud counterclaim to the extent premised on the theory that plaintiffs' allegations in this lawsuit are accurate and their

certified timesheets inaccurate. Cable's fraud counterclaim is dismissed with prejudice to the extent so premised.

On the alternative theory that plaintiff's certified timesheets are accurate, and their allegations in support of their claims in this action false, again no counterclaim for fraud would lie. Cable's alternative theory (to the extent Cable has not, by and through the memorandum it filed in opposition to plaintiffs' motion, abandoned its alternative theory) is fatally flawed in several respects. First, Cable has not adequately alleged that it actually relied upon the accuracy of plaintiffs' allegations. Patently, had Cable done so, it would have agreed that it owed plaintiffs additional compensation and would have paid plaintiffs' wage claims. Second, Cable cannot establish a right to rely upon the accuracy of allegations contained within a pleading in an adversarial proceeding. Third, Cable does not and cannot point to damages it suffered proximate to and in consequence of its reliance upon the accuracy of plaintiffs' allegations. In the event it were established that plaintiffs accurately recorded their hours on their daily and weekly timesheets and have filed claims against Cable on the basis of allegations they knew to be entirely false, the remedies available to Cable would not be a counterclaim for fraud but rather either sanctions issued pursuant to Federal Civil Procedure Rule 11, *see* Fed. R. Civ. P. 11(b), or, in the alternative, a post-judgment action for malicious prosecution, *see See Mantia*, 190 Or. App. at 419-420. Plaintiffs' motion is therefore granted as to Cable's fraud counterclaim to the extent premised on the theory that plaintiffs worked only the hours recorded on their daily and weekly timesheets, and filed false allegations in support of their claims in this action. Cable's fraud counterclaim is dismissed with prejudice to the extent so premised.

Page 11 - OPINION AND ORDER

II.      **Cable's Prevailing-Party Attorney Fees Counterclaim**

As noted above, after plaintiffs filed the motion to dismiss now before the court, Cable voluntarily amended its pleading to withdraw its counterclaim for prevailing-party attorney fees. Plaintiffs' motion is therefore denied as moot as to Cable's Or. Rev. Stat. 653.055 counterclaim.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#13) is granted as to Cable's fraud counterclaim and denied as moot as to Cable's counterclaim for prevailing-party attorney fees. Cable's fraud counterclaim is dismissed with prejudice.

Dated this 17th day of May, 2012.

Honorable Paul Papak
United States Magistrate Judge